IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELEANOR A. HULL,

        Plaintiff,

    vs.

WELLS FARGO BANK, N.A., and
NORTHWEST TRUSTEE SERVICES,
INC.,

        Defendants.

Case No. 6:15-cv-01990-AA
OPINION AND ORDER

---

Jeffrey A. Myers
Bowles Fernández Law LLC
5200 S.W. Meadows Road, Suite 150
Lake Oswego, OR 97025
        Attorney for plaintiff

Molly J. Henry
Keesal, Young & London
1301 Fifth Avenue, Suite 3100
Seattle, WA 98101

John M. Thomas
RCO Legal, P.C.
511 S.W. 10th Avenue, Suite 400
Portland, OR 97205
        Attorneys for defendants

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Eleanor A. Hull seeks a declaratory judgment invalidating the sale of her former residence at a foreclosure auction based on alleged violations of the Oregon Trust Deed Act ("OTDA"). She also alleges defendant Wells Fargo Bank, N.A. ("Wells Fargo") breached two agreements to modify the terms of the loan secured by the property and committed financial abuse of a vulnerable person, in violation of Or. Rev. Stat. § 124.110. Defendants moved for judgment on the pleadings. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

Plaintiff owned a piece of residential property located in Salem, Oregon ("the property"). She purchased the property with the proceeds of a loan from Wells Fargo. The loan was secured by a Deed of Trust ("DOT"). Shortly after origination, Wells Fargo sold the property to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). Wells Fargo remained the loan servicer.

In July 2009, Wells Fargo advised plaintiff she qualified for a Home Affordable Modification Trial Period Plan ("TPP"). A letter from Wells Fargo to plaintiff, attached as an exhibit to the Complaint, explains "[i]f you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure." Doc. 1-1 at 41. The letter sets out three steps to apply for loan modification: (1) explain the financial hardship making it difficult to keep up with mortgage payments; (2) submit documentation of income; and (3) make monthly TPP payments, which are set at a lower rate than the regular mortgage payments. Plaintiff made three TPP payments of $1,123.13 each. Compl. ¶ 11. In December 2009, Wells Fargo stopped accepting TPP payments.

Page 2 - OPINION AND ORDER

In August 2010, plaintiff defaulted on her loan payments. Wells Fargo initiated nonjudicial foreclosure proceedings. Defendant Northwest Trustee Services ("NWTS") served as trustee and agreed to conduct the sale.

Plaintiff alleges she sought the assistance of Consumer Credit Counseling NW, which negotiated an agreement in late 2011 to stop the foreclosure. Pursuant to the agreement, plaintiff promised to pay $3,256.59 to Wells Fargo and thereafter resume her normal payment schedule; in exchange, Wells Fargo "would recapitalize the arrearage onto the back end of the loan and stop the non-judicial foreclosure." Compl. ¶ 15. Plaintiff further asserts she made the required payment, but Wells Fargo did not stop the foreclosure proceedings.

Plaintiff then filed for Chapter 13 bankruptcy. The bankruptcy plan, confirmed in October 2011, required plaintiff to resume regular mortgage payments to Wells Fargo as well as make monthly payments to cure $21,116 in arrearages. *See* Doc. 11-1 at 3-4 (original plan proposal); Doc. 11-3 at 4 (order confirming plan with amendments).[1] Plaintiff immediately defaulted on her payments under the plan, and in December 2011 Wells Fargo moved for relief from the automatic stay. Plaintiff admitted defaulting and stipulated to cure the post-petition arrearages through an additional six-month payment plan. Plaintiff then defaulted on the stipulation. Based on this series of defaults, in April 2012 Wells Fargo sought and obtained "relief from the automatic stay to foreclose on, and obtain possession of, the property, to the extent permitted by applicable nonbankruptcy law." Doc. 11-6 at 3.

---

[1] The Court takes judicial notice of the bankruptcy court filings attached as exhibits to Wells Fargo's Motion for Judgment on the Pleadings. *See Fauley v. Wash. Mut. Bank FA*, 2014 WL 1217852, *4 (D. Or. Mar. 21, 2014) (Because "motions and orders filed in the bankruptcy court are matters of public record that are beyond dispute," they meet the judicial notice requirements of Fed. R. Evid. 201.).

In July 2012, plaintiff filed a post-confirmation amendment to her plan. The amendment removed conditions requiring payment to Walls Fargo and instead provided plaintiff would surrender the property to Wells Fargo. The amended plan, which became effective in November 2012, eliminated plaintiff's obligation to make regular mortgage payments and also lowered her monthly payments to the trustee. *Compare* Doc. 11-3 at 4 (monthly trustee payments of $305 for twelve months, followed by payments of $600 for twenty-four months) *with* Doc. 11-7 at 3 (monthly trustee payments of $265 for thirty-six months).

While her initial Chapter 13 bankruptcy was still open, plaintiff filed two more Chapter 13 petitions. She did not disclose her open bankruptcy case or previous bankruptcy petitions in either filing. In February 2015, the second bankruptcy petition was dismissed through a form order. In June 2015, the Bankruptcy Court for the District of Oregon issued an Order to Show Cause why the third petition "should not be dismissed with a bar to filing any petition under the Bankruptcy Code in any District of the United States before the later of: 1) one year, or 2) the closure of [the initial bankruptcy case]." Doc. 11-10 at 3. The United States Trustee responded to the Order to Show Cause by explaining that plaintiff, who is in her early 90s, appeared to have filed the second and third bankruptcy petitions on the advice of Colleagues in Law, which is based in Las Vegas, Nevada, and advertises itself as a "foreclosure rescue" operation. Doc. 11-11 at 3-4. Plaintiff paid Colleagues in Law $3,800 for their services. Doc. 11-11 at 3. The United States Trustee disclaimed any intent to take enforcement action against plaintiff, but recommended dismissing the third bankruptcy case and barring plaintiff from filing any further petitions for one year. Consistent with that recommendation, the bankruptcy court dismissed the third bankruptcy case in August 2015.

Dismissal of the third bankruptcy case and entry of the bankruptcy court's one-year bar order removed the barrier of the automatic stay. In September 2011, NWTS issued an Amended Trustee's Notice of Sale, informing plaintiff the property would be sold at auction on October 5, 2015.

On October 1, 2015, plaintiff filed this lawsuit in Marion County Circuit court, alleging violations of the OTDA, breach of contract, and financial abuse of a vulnerable person. The complaint seeks (1) a declaratory judgment invalidating the foreclosure sale; (2) monetary damages related to the breach of contract and financial abuse claims; and (3) costs and attorney fees. On October 21, 2015, defendants removed the suit to federal court on diversity grounds. On October 26, 2015, the property was sold at auction. Defendants now move for judgment on the pleadings.

## STANDARD

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pat River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (citation and quotation marks omitted). Accordingly, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quotation marks omitted). To survive a motion for judgment on the pleadings, "the non-conclusory 'factual content' [of the complaint]," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

Page 5 - OPINION AND ORDER

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

## DISCUSSION

In their motions to dismiss, defendants argue plaintiff has failed to state a claim for relief and assert a number of affirmative defenses. Because different defenses and arguments apply to each claim, I will address the claims separately.

I.    *Violation of OTDA*

Plaintiff argues the foreclosure sale must be invalidated because the notice was not compliant with the OTDA. Specifically, she alleges it (1) listed an incorrect zip code for the property; and (2) listed Wells Fargo, rather than Freddie Mac, as the beneficiary on the DOT. Defendants contend plaintiff is judicially estopped from any attempt to invalidate the foreclosure because she agreed to surrender the property in bankruptcy court.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The doctrine promotes "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings" and "protect[s] against a litigant playing fast and loose with the courts." *Id.* (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). To determine whether judicial estoppel applies, a court must consider three factors. First, the "party's later position must be clearly inconsistent with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citations

and quotation marks omitted). Second, the court asks whether the party "succeeded in persuading a court to accept that party's earlier position," because "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus little threat to judicial integrity." *Id.* at 750-51 (citations and quotation marks omitted). Third, the court asks "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* This list of factors is not "an exhaustive formula," and "[a]dditional considerations may inform the doctrine's applications in specific factual contexts." *Id.*

In this case, the threshold question is whether plaintiff's bankruptcy court representation that she intended to surrender the property is clearly inconsistent with her challenge to the foreclosure sale under the OTDA. "The Bankruptcy Code does not define the term[] 'surrender' . . . for the purposes of Chapter 13. Nonetheless, 'surrender' has been interpreted in this context as the debtor's relinquishment of his or her right to the property at issue, such that the secured creditor is free to accept or reject that collateral." *Bank of N.Y. Mellon v. Watt*, 2015 WL 1879680, *4 (D. Or. Apr. 22, 2015). Courts interpret "surrender" under the Bankruptcy Code to mean "voluntarily relinquish[ing] all rights in the property, including the right to possession, to the secured creditor." *In re White*, 487 F.3d 199, 207 (4th Cir. 2007); *accord In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006) (surrender means to "cede . . . possessory rights in the collateral" and make it "available" to the secured creditor); *Watt*, 2015 WL 1879680 at *5 (surrender means "cessation of [a debtor's] interest" in property).

With these definitions in mind, I turn to the question of inconsistency. Neither this court nor the Ninth Circuit has addressed whether actively opposing foreclosure is clearly inconsistent with

Page 7 - OPINION AND ORDER

an agreement to surrender property under a bankruptcy plan. However, bankruptcy courts addressing motions to compel compliance with surrender provisions of bankruptcy plans have concluded active opposition to foreclosure is irreconcilable with surrender. *See, e.g., In re Lapeyre*, 544 B.R. 719, 722 (Bankr. S.D. Fla. 2016); *In re Metzler*, 530 B.R. 894, 900 (Bankr. M.D. Fla. 2015). Although these courts did not directly address the "clearly inconsistent" standard for judicial estoppel, their discussion is on point. For example, in *In re Guerra*, 544 B.R. 707 (Bankr. M.D. Fla. 2016), the court explained that where (1) a foreclosure action is already in progress when the debtor agrees to surrender the property; and (2) the debtor actively fights the foreclosure shortly after making that agreement, the debtor's behavior gives rise to an inference he or she "had no intention of surrendering the[] property — *i.e.*, [the debtor] misled [the c]ourt." *Id.* at 709.

Plaintiff had already attempted to prevent Wells Fargo from foreclosing at the time of the 2012 surrender amendment. Her decision to file two new bankruptcy petitions and this lawsuit in an attempt to stop or invalidate the foreclosure gives rise to an inference she never intended to surrender the property. Accordingly, I find her agreement to the surrender amendment clearly inconsistent with her subsequent attempts to stop the foreclosure sale. I also find plaintiff succeeded in convincing the bankruptcy court she intended to surrender the property, as that court confirmed the amended plan. Finally, I find plaintiff would derive an unfair advantage from her surrender representation if she were permitted to proceed on her OTDA claims here. As a result of her decision to surrender the property, plaintiff's trustee payments were significantly lower. Moreover, Wells Fargo might have objected to the amended plan had it not reasonably believed plaintiff would in fact surrender the property.

Plaintiff cannot tell the bankruptcy court she will surrender the property and then use this court to block Wells Fargo from exercising its ownership rights. Under similar circumstances, district courts in the Ninth Circuit have found judicial estoppel applies. *See Cordero v. America's Wholesale Lender*, 2012 WL 4895869, *11 (D. Idaho Oct. 15, 2012) (finding the plaintiff judicially estopped from identifying defendant bank as a secured creditor in her bankruptcy schedules, then fighting foreclosure on the ground defendant was an unsecured creditor); *Rivera v. Recontrust Co., N.A.*, 2012 WL 2190710, *2 (D. Nev. Jun. 14, 2012) (applying judicial estoppel where the plaintiff agreed to surrender property in bankruptcy court and subsequently asserted state law claims in an attempt to halt foreclosure). Plaintiff is judicially estopped from asserting her OTDA claims, and those claims are dismissed with prejudice.[2]

## II.    *Breach of Contract*

Plaintiff next alleges Wells Fargo breached two agreements to modify the terms of the DOT. Wells Fargo argues plaintiff's breach of contract claim is barred by Oregon's statute of frauds, plaintiff's material breach in defaulting on the underlying loan obligation, and plaintiff's failure to provide notice and an opportunity to cure, as required by the DOT. Wells Fargo further contends plaintiff's breach of contract claim is inadequately pleaded.

Oregon law requires certain types of agreements to be signed and in writing in order to be valid and enforceable. Or. Rev. Stat. § 41.580(1). Agreements "concerning real property" and

---

[2] Defendants argue judicial estoppel bars all the claims in this lawsuit. I disagree. Although plaintiff's agreement to surrender the property is clearly inconsistent with attempting to stop the foreclosure sale, it is not inconsistent with seeking damages in connection with allegations Wells Fargo broke promises to plaintiff in the months leading up to plaintiff's default. Similarly, there is no inconsistency between plaintiff's agreement to surrender the property and her financial abuse claim. Plaintiff's remaining claims seek money damages and in no way interfere with Wells Fargo's ownership rights in the property.

Page 9 - OPINION AND ORDER

agreements "to modify or amend the terms under which [a] person has lent money or otherwise extended credit" are covered by the statute of frauds. *Id.* § 41.580(1)(f), (h). Wells Fargo is therefore correct that an agreement to "hold off on conducting any foreclosure or enforcement proceedings" generally must be in writing to be enforceable. *Nelson v. Am. Home Mtg. Servicing, Inc.*, 2013 WL 3834656, *5 (D. Or. Jul. 24, 2013) (quotation marks omitted and alterations normalized). However, "[f]ull performance of a promise by one party removes that part of the contract from the operation of the statute [of frauds.]" *Willamette Quarries, Inc. v. Wodtli*, 781 P.2d 1196, 1199 (Or. 1989). To the extent plaintiff alleged full performance, the statute of frauds does not bar her breach of contract claims. As explained in further detail below, pleading deficiencies prevent me from determining whether plaintiff has alleged full performance; thus, it is premature to determine whether the statute of frauds bars her breach of contract claim.

Defendant further asserts plaintiff's breach of contract claim is barred by (1) plaintiff's default on her mortgage payments, which constitute a material breach of the DOT; and (2) plaintiff's failure to provide notice and an opportunity to cure, as required by the DOT. Neither defense is applicable to plaintiff's claims here. Plaintiff alleges Wells Fargo breached its agreements to *modify* the DOT, not the DOT itself. Courts regularly enforce loan modification contracts against the lender even when it is clear the borrower's default on the underlying loan agreement led to the modification. *See, e.g., Schmelzer v. Wells Fargo Home Mtg.*, 2011 WL 5873058, *6 (D. Or. Nov. 21, 2011). Similarly, the DOT notice-and-cure provision applies to judicial actions "aris[ing] from the other party's actions pursuant to *this Security Instrument*." Doc. 1-1 at 29 (emphasis added). Plaintiff does not allege defendant breached the DOT, so the notice-and-cure requirement does not apply to her breach of contract claim.

Page 10 - OPINION AND ORDER

Nonetheless, plaintiff's breach of contract claim must be dismissed because it is inadequately pleaded. To establish a breach of contract claim, a plaintiff "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damages to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. Ct. App. 1996) (quotation marks omitted). A lender's failure to enter into a loan modification agreement with a qualifying borrower following successful completion of TPP may constitute breach of contract. *See Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 884 (9th Cir. 2013) (per curiam). But here, the complaint does not adequately allege what Wells Fargo promised to do, explain how it failed to live up to any such promise, or set out how plaintiff complied with her portion of the agreement aside from making three TPP payments. The complaint merely alleges "Wells Fargo cancelled Plaintiff's TPP and refused to accept further payments from Plaintiff." Compl. ¶ 12. That is inadequate to state a claim for breach of contract under Oregon law.

The allegations related to the second alleged loan modification also suffer from pleading deficiencies. Plaintiff alleges some terms of the modification agreement negotiated by Consumer Credit Counseling NW: for example, she alleges she agreed to pay $3,256.59 and thereafter resume normal payments, and Wells Fargo agreed to stop foreclosure proceedings and recapitalize the arrearage on the back end of the loan. Compl. ¶ 15. But key terms are missing, including the total amount of arrearage. Moreover, plaintiff does not allege full performance — she alleges she made the initial payment but says nothing about the regular mortgage payment. Because plaintiff has inadequately pleaded her claim for breach of contract, and because it is unclear based on these pleading deficiencies whether the statute of frauds is a barrier to her assertion of that claim,

Page 11 - OPINION AND ORDER

plaintiff's breach of contract claim is dismissed without prejudice.  If plaintiff amends her breach of contract claim, Wells Fargo is free to reassert its statute of frauds defense.

III.    *Financial Abuse of Vulnerable Person*

Plaintiff concedes Wells Fargo, a financial institution, is statutorily exempt from a claim for financial abuse of a vulnerable person. *See* Or. Rev. Stat. § 124.115(1)(a).  Accordingly, plaintiff's financial abuse claim against Wells Fargo must be dismissed with prejudice.

Plaintiff argues dismissal of the claim is unwarranted because NWTS is a proper defendant. Although I agree Oregon law permits a financial abuse claim against NWTS,[3] plaintiff has nonetheless failed to state a claim for financial abuse.  First, all the financial abuse allegations in the complaint refer to Wells Fargo, not NWTS. *See* Compl. ¶¶ 53-54.  Second, the complaint does not allege NWTS engaged in any conduct qualifying as "wrongful" within the meaning of Or. Rev. Stat. § 124.110(1)(a). *See Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003) ("[W]rongful" conduct is conduct "carried out in pursuit of an improper motive or by improper means," for example by "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation,

---

[3] NWTS asserts it is also exempt from such a claim.  I disagree.  Section 124.115(1)(a) exempts from financial abuse claims "financial institutions." Or. Rev. Stat. § 124.115(1)(a). The provision then cross-references Or. Rev. Stat. § 706.008, which defines "financial institution" as "an insured institution, an extranational institution, a credit union as defined in [Or. Rev. Stat. §] 723.006, and out-of-state credit union under [Or. Rev. Stat. §] 723.042 or a federal credit union." *Id.* § 706.008(9).  Acknowledging it does not fit within this definition, NWTS attempts to incorporate the definition of "banking institution," which appears in a different subsection of section 706.008. *See id.* § 706.008(4).  "[A]n Oregon trust company" such as NWTS is a "banking institution" under that provision.  But as the different statutory definitions demonstrate, "banking institution" and "financial institution" are not synonymous. Section 124.115(1)(a) exempts "financial institution[s]" but not "banking institution[s]" from financial abuse claims.  NWTS's remaining citations are to provisions of Oregon law establishing powers and qualifications of trustees; none of them exempt NWTS from being subject to an elder abuse claim.  NWTS is not statutorily exempt.

Page 12 - OPINION AND ORDER

defamation, . . . disparaging falsehood[, or] . . . undue influence.") (citations and quotation marks omitted).

## CONCLUSION

Defendants' motions for judgment on the pleadings (docs. 11 and 12) are GRANTED. Plaintiff's first and third claims for relief, for violation of the OTDA and financial abuse, are dismissed with prejudice. Plaintiff's second claim for relief, for breach of contract, is dismissed without prejudice. Plaintiff's request for oral argument is DENIED as unnecessary. This case is DISMISSED.

IT IS SO ORDERED.

Dated this 28th day of March 2016.

_____

Ann Aiken
United States District Judge